# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON HUNTING, et. al, | Case No.: 1:10-cv-01844 AWI JLT |
| Plaintiffs, | ORDER GRANTING PLAINTIFFS' MOTION TO AMEND THE COMPLAINT |
| v. | |
| XIUM CORP, et. al, | (Doc. 34) |
| Defendants. | |

Plaintiffs seek to amend their complaint to add facts to support their contention that an agent or representative of Xedia was negligent in the direction and supervision of the installation of the product that Plaintiffs claim caused their damages. (Doc. 34-1). Defendant Xium Corporation and Xedia Technologies, Inc. ("Defendants") oppose the motion. (Doc. 39). For the following reasons, Plaintiffs' motion to amend the complaint is **GRANTED**.

**I. Procedural History**

Plaintiffs initiated this action against Defendants on May 20, 2010 in Kern County Superior Court. (Doc 1 at 10-15) Plaintiff alleged that he was injured by a product manufactured and distributed by Defendants. Plaintiff's initial complaint alleged two causes of action: products liability related to Jason Hunting's personal injuries and for loss of consortium by Lorraine Hunting. Id. However, the products liability cause of action, asserted three counts: one based upon strict liability, one based on negligence and one based on breach of an express or an implied warranty. Id.

1  Defendants filed their answer to the complaint. (Doc. 7 at 3). On October 5, 2010, Defendants
2  removed the matter to this Court. (Doc. 1). On March 22, 2011, the Court issued the initial scheduling
3  order. (Doc. 19). In it, the Court did not set a deadline by which amended pleadings would be filed.[1]
4  On October 28, 2011, the Court granted the parties' request to amend the Scheduling Order. (Doc. 30).
5  This order extended the non-expert discovery deadline to December 29, 2011 and the deadline to file
6  non-dispositive motions to March 1, 2012. Id.

7  In the current motion, Plaintiffs seek leave to file an amended complaint to add an allegation of
8  negligence against Defendant Xedia in the supervision of the product manufactured by Xium Corp.
9  (Doc. 34). Defendants oppose the motion and claim to be prejudiced by the proposed amendment unless
10 they are provided additional time to conduct discovery. (Doc. 39).

11 **II.   Analysis and Discussion**

12 Under Fed. R. Civ. P. 15(a), a party may amend a pleading once as a matter of course within 21
13 days of service, or if the pleading is one to which a response is required, 21 days after service of the
14 responsive pleading. "In all other cases, a party may amend its pleading only with the opposing party's
15 written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Since more than 21 days have passed
16 since the date of service of the Complaint and Defendants have not unequivocally consented to an
17 amended pleading, Plaintiffs are required to obtain leave from this Court before they may proceed with
18 an amended complaint. Id.

19 To reach a decision on a motion to amend under Rule 15(a), the Court must weigh the factors
20 for and against the requested amendment. Millar v. Bar Dist. 236 F.Supp.2d 1110*, 2002 U.S. Dist.
21 LEXIS 22589, *5 (N.D Cal. November 15, 2002). Fed. R. Civ. P. 15(a)(2) declares that leave to amend
22 should be freely given when justice so requires and only denied on a clear showing other interests
23 outweigh the general principle in favor of allowing an amendment. Id.

> In the absence of any apparent or declared reason–such as undue delay, bad faith or
> dilatory motive on the part of the movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the opposing party by virtue of

---

[1] The only mention of amendments to the pleadings is Defendants' request to amend their answer to include an affirmative defense. Id. Although the joint scheduling report and the scheduling order both state that the amended answer is attached to the reports, it was not. Further, no motion or stipulation to file an amended answer, no amended answer nor any order granting Defendants leave to amend the answer, was ever filed. (Docs. 16, 17).

2

allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182.  These factors are not of equal weight and prejudice to the opposing party has long been held to be the most critical factor in determining whether to grant leave to amend. Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) ("As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight"); Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990); Howey v. United States, 481 F.2d 1187, 1190 (9th Cir. 1973).

"In exercising [its] discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981).  Consequently, the policy to grant leave to amend is applied with extreme liberality.  Id.

### A.     Prior Amendments

Plaintiffs have not previously amended or requested to amend their complaint.  Thus, this factor weighs in favor of granting Plaintiffs' request.

### B.     Futility of Amendment

"Futility of amendment means that "it was not factually possible for [the] plaintiff to amend the complaint so as to satisfy the standing requirement." Allen, 911 F.2d at 373.  In addition, futility may be found where added claims duplicate existing claims or are patently frivolous, or both. See Bonin, 59 F.3d at 846.  The amendment requested by plaintiff does not duplicate existing claims nor is it patently frivolous given the deposition testimony presented to this Court.  Doc. 34-3, 34-4).  Thus, this issue weighs in favor of granting the Plaintiffs' request to amend.

### C.     Undue Delay

In Howey, the Ninth Circuit Court of Appeals observed, "[t]he purpose of the litigation process is to vindicate meritorious claims. Refusing, solely because of delay, to permit an amendment to a pleading in order to state a potentially valid claim would hinder this purpose while not promoting any other sound judicial policy." Howey, 481 F.2d at 1191.  Thus, by itself, undue delay is insufficient to prevent the Court from granting leave to amend. DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186

(9th Cir. 1986). However, in combination with other factors, delay may be sufficient to deny amendment. *See* Hurn v. Ret. Fund Trust of Plumbing, 648 F.2d 1252, 1254 (9th Cir. 1981) (where the Court found a delay of two years, "while not alone enough to support denial, is nevertheless relevant"). When evaluating undue delay, the Court must consider whether "permitting an amendment would ... produce an undue delay in the litigation." Jackson, 902 F.2d at 1387. In addition, a Court should examine "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." Id. at 1388; *see also* Eminence Capital, 316 F.3d at 1052.

Defendants contend that Plaintiffs unduly delayed filing their motion to amend, as Plaintiffs were aware of Swepston's presence and interactions with Hunting on the day of the accident. (Doc. 39 at 4). Plaintiffs acknowledge they knew of Swepston's involvement at the outset of the litigation, but contend that Plaintiffs only recently learned, through expert testing and depositions, that Swepston's alleged selection of the installation location was a significant factor in causing Hunting's injuries. (Doc. 40 at 2). Although Plaintiffs knew of Swepston's role in the installation and learned from his expert in early October that the installation site contributed to the event at issue, the Court finds that Plaintiffs have not unreasonably delayed in waiting until February 2012 to file their motion to amend–which was just weeks after completing the expert depostions.

**D.   Bad Faith**

Based upon the Disputed and Undisputed Facts set forth in the joint scheduling report filed in March 2011, it is clear that the parties did not discuss the issue now raised by Plaintiffs' proposed amendment at the time the parties filed the joint report. (Doc. 16). While the joint report states, "Defendants were negligent," in the Disputed Facts section, that statement is too vague for the Court to infer knowledge of the issue on either party. (Doc. 16 at 2). The Report does not mention Mr. Swepston by name and the document does not set forth any issues with regard to negligent direction or supervision by any representative of the Defendant(s). Id.

The parties later appeared before this Court on October 28, 2011 to request revised discovery deadlines. (Doc. 30). At that time, the parties informed the Court they had been unable to conduct any meaningful discovery until their respective experts had conducted tests to determine the reason the event occurred. Id.  Plaintiffs' counsel stated that he received the report from his expert a few weeks before

4

the court appearance. Id. The Court advised the parties that the requested modifications they sought posed a risk to the parties, in that the results of nondispositive motions may not be available for use in dispositive motion efforts. Id. At the time, both parties acknowledged the risk and wanted to proceed with the modifications they had proposed to the Court. Id.

Plaintiffs were aware at the time of the October 28, 2011 appearance that their expert had determined why the event occurred; yet they did not raise the issue of a possible amendment to the pleadings with the Court or with Defendants. Though the Court does not find Plaintiffs acted in bad faith, Plaintiffs' should have more diligently pursued the issue with the Court and opposing counsel.

### E. Prejudice to Defendants

The most critical factor in determining whether to grant leave to amend is prejudice to the opposing party. Eminence Capital, 316 F.3d at 1052. The burden of showing prejudice is on the party opposing an amendment to the complaint. DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 187 (9th Cir. Cal. 1987); Beeck v. Aquaslide 'N' Dive Corp., 562 F.2d 537, 540 (9th Cir. 1977). Prejudice must be substantial to justify denial of leave to amend. Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). There is a presumption under Rule 15(a) in favor of granting leave to amend where prejudice is not shown. Eminence Capital, 316 F.3d at 1052. One indicator of prejudice includes the need to reopen discovery. In re Fritz Cos. Secs. Litig., 282 F. Supp. 2d 1105, 1109 (N.D. Cal. 2003).

Here, Defendants contend that, absent extending discovery and continuing the trial, they will be prejudiced by Plaintiffs' amended complaint. (Doc. 39). Defendants note that Plaintiffs' failure to plead an "agency" theory prior to discovery closing prevented them from propounding written discovery on the issue. (Doc. 39 at 5) Plaintiffs argue that there is no prejudice because everyone who would testify about Swepston's conduct on the day of the incident have already been deposed and all the documents or persons having any relevance to Swepston's relationship with Xedia have been disclosed in discovery. (Doc. 40 at 3). Plaintiffs' further contend that Defendants actually possess all the information pertaining to Swepston's relationship with Defendants. (Doc. 40 at 3-4). Defendants dispute this and contend that the addition of the agency claim would require further depositions. Id. At the hearing, Defendants clarified that they would want additional discovery to flesh out Winco's "hiring" of Swepston related

1  to the installation of the devices.[2] The purpose of this discovery would be to add to Defendants' own
2  evidence that Swepston was not representing Xedia at the time of the installation and, instead, was
3  representing Winco. Defendants stated that a person most knowledgeable deposition.

4  At the hearing, Defendants admitted that they had conducted no discovery related to Winco's
5  involvement in this matter despite that the injury occurred on Winco premises while installing devices
6  purchased by Winco and which were being installed on Winco equipment. This decision, clearly, was
7  tactical, given that Defendants knew Swepston, knew he was present at the time of the installation and
8  knew that Plaintiff claimed Swepston assisted in the installation. Likewise, their counsel was aware that
9  Plaintiff must prove that the product was being used in a manner *intended by Defendants* and/or used
10 in a reasonably foreseeable manner without adequate warnings being given to prove his product liability
11 claim. Thus, Swepston's capacity at the Winco site when the installation occurred seems that it was
12 particularly relevant to the complaint from the beginning.

13 Nevertheless, Defendants contend that they would be prejudiced by the proposed amendment
14 because the new claims "arise from an entirely different body of law" than the original complaint.
15 Likewise, Defendants assert that the new claims are therefore prejudicial because the claims "increase
16 the scope and complexity of the litigation." (Doc. 39 at 4). Though Defendants correctly state that the
17 legal issues would be expanded, the expansion is only marginal. Plaintiffs have *always* asserted a
18 negligence cause of action related to Mr. Hunting's alleged injuries. (Doc. 1 at 13) The amendment
19 merely alerts Defendants to a specific act by Swepston in allegedly directing Hunting to install the device
20 in the 100 amp breaker panel. Moreover, as noted above, the Court finds that the discovery sought now,
21 was implicated from the inception of the case.

22 For their part, Defendants have *always* denied that they were negligent and have *always* asserted
23 that a third party caused the alleged damages. (Doc. 7-4 at 2) Given Swepston's involvement in the
24 installation, Defendants' affirmative defenses provided reason to conduct discovery into why Swepston
25 was present at the installation and to whom he was reporting. Indeed, this was not lost on either side

---

[2] Defendants also sought discovery related to Winco's and Braaton Electric's liability related to the failure of the breaker box at issue to have the required warning/instruction labels. However, this topic is not implicated by the amendment at issue.

given that Mr. Swepston's deposition was taken on December 9, 2011.  (Doc. 34-4) At that time, he asserted that he was a distributor of the product and worked for Xedia as tech support and for whom he conducted training sessions for other distributors. (Doc. 34-4 at 2-3, 10-11) He testified also that he was present at Winco–though at the behest of Tom Little from Winco who paid him to be there–on the day Mr. Hunting was injured. Id. at 11-12. Swepston testified that his role was to guide the installation and to prevent the improper installation of the devices.  Id.  Likewise, Mr. Hunting testified that Mr. Swepston specifically told him to install the device on the 100 amp breaker, despite that the device was rated only for up to a 90 amps, and testified that Swepston assured him that this was not a problem. (Doc. 34-3 at 5)

Finally, the facts that could give rise to a finding of an agency relationship between Swepston and Xedia are uniquely within the control of Defendants.  Swepston's account of his legal relationship with Xedia may be easily determined through review of documents and interview of witnesses that are within Xedia's control.[3]  Therefore, the Court finds that Defendants have not demonstrated that they would be prejudiced by the amendment.

### III. CONCLUSION

After weighing the pertinent factors and in light of the liberality with which the Court must view the motion, the Court finds there is an insufficient showing of prejudice to justify rejecting the amendment.  However, so that the trial court is not forced to preside over a trial where "discovery" occurs on the witness stand, the Court will grant a very limited discovery period to allow Defendants to serve a subpoena for records and/or a deposition subpoena to Winco.

**ORDER**

Based upon the foregoing, the Court **ORDERS**:

1. Plaintiffs' motion to amend their complaint is **GRANTED**;
2. Plaintiffs SHALL file their first amended complaint within two court days of service of this order;
3. Defendants are granted until April 16, 2012 to obtain records from Winco and to

---

[3] Indeed, it appears that Plaintiffs will be most prejudiced because they will not be entitled to know before trial exactly how Defendants intend to defend against this agency relationship claim.

1  complete a deposition of Winco's person most knowledgeable, related to the
2  employment relationship between Winco and Freddie Swepston.
3  IT IS SO ORDERED.
4  Dated:   **March 15, 2012**                                    **/s/ Jennifer L. Thurston**
                                                                  UNITED STATES MAGISTRATE JUDGE